## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| *In re TalentLaunch Data Breach Litigation* | Case No. 1:24-cv-0456 |
| | Judge Pamela A. Barker |
| | Magistrate Judge Jonathan D. Greenberg |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## I.        INTRODUCTION

Plaintiffs and the proposed Class have reached a $1,225,000 non-reversionary common fund class action settlement with Defendant Alliance Solutions Group LLC d/b/a TalentLaunch ("Defendant" or "TalentLaunch," and collectively with Plaintiffs, the "Parties") to resolve claims arising from a cybersecurity incident Defendant experienced on its systems in May 2023 that impacted approximately 119,000 individuals (the "Data Incident"). *See* S.A. The information potentially implicated in the Data Incident includes individual's names; dates of birth; Social Security numbers; driver's license numbers; state identification numbers; passport numbers; financial account information; digital signatures; medical information; health insurance information; biometric information; and mother's maiden names (collectively referred to as "Private Information"). *See* Consolidated Class Action Complaint ("Compl."), ECF No. 8 ¶¶ 1, 7, 103, 117, 129, 141, 152.

The Settlement not only grants real relief to impacted persons but is also within the necessary range of reasonableness to justify the Court's granting preliminary approval of the class action settlement under Rule 23(e). *See also* Coates Decl. ¶ 21 (including a chart listing certain other recent data breach class action settlements). Thus, the Court should preliminarily approve the settlement; direct that notice be disseminated to Class Members in the manner outlined below; set deadlines for exclusions, objections, and briefing on Plaintiffs' Motion for Final Approval and Motion for Attorneys' Fees, Expenses, and Class Representative Service Awards; and set a Final Approval Hearing date.

## II.       BACKGROUND

### A.        Procedural History

This Litigation involves the alleged compromise of Private Information resulting from the

Data Incident experienced by Defendant in May 2023 and that was discovered on May 31, 2023. S.A. ¶ 1; Compl. ¶¶ 5, 32. Plaintiffs and Class Members are Defendant's current and former customers. Compl. ¶¶ 1, 27. Eight months after the Data Incident, Defendant sent notice of breach letters ("Notice Letter") to impacted individuals providing a description of the type of Private Information involved and explaining that the data was accessed from Defendant's systems. *Id.* ¶¶ 5, 28, 34.

In response, Plaintiff James Christian filed this proposed class action with the caption *Christian v. Alliance Solutions Group, LLC d/b/a TalentLaunch*. Thereafter, Plaintiffs Steve Buyck and Charles Leland Perry III filed separate suits as well (Nos. 1:24-cv-464, 535). The Court entered an order consolidating these actions on May 13, 2024. ECF No. 4. On June 28, 2024, Plaintiffs, now joined by Plaintiffs David Barker and Amanda Lenz, filed their Consolidated Class Action Complaint, asserting claims for negligence; negligence *per se*; breach of contract; breach of implied contract; unjust enrichment; breach of fiduciary duty; and seeking a declaratory judgment. *See* Compl. *passim*. Thereafter, the Parties filed a Joint Motion to Stay proceedings pending mediation. ECF No. 12. The Court granted the Joint Motion to Stay on August 7, 2024. ECF No. 13.

Thereafter, the Parties attended private mediation with experienced mediator Bruce Friedman, Esq. on November 6, 2024. Although the Parties were unable to reach an agreement that day, negotiations continued and the Parties were able to reach a settlement in principle on November 18 for a $1,225,000 non-reversionary common fund on behalf of the approximately 119,000 impacted individuals. *See* ECF No. 15 ¶ 5; Coates Decl. ¶ 7. The Settlement Agreement will resolve all claims related to the Data Incident for the Class.

Accordingly, Plaintiffs respectfully move the Court to grant preliminary approval of the

Settlement Agreement and Notice Plan as detailed herein.

**B.    Summary of Settlement Terms**

Under the proposed Settlement, Defendant will pay $1,225,000 to establish the Settlement Fund to be distributed under the Settlement Agreement. The Settlement defines the Class as:

> **All individuals impacted by TalentLaunch's Data Incident, including all individuals who received notice of the Data Incident, that occurred in May 2023.**

S.A. ¶ 13. The Class specifically excludes: (i) all Persons who timely and validly request exclusion from the Class; (ii) the Judge assigned to evaluate the fairness of this settlement (including any members of the Court's staff assigned to this case); (iii) Defendant's officers and directors, and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge. *Id*.

The Class is comprised of approximately 119,000 individuals nationwide. *Id*. ¶ 58. Defendant has agreed to pay a total of $1,225,000 into the Settlement Fund to make payments to Class Members, pay the costs of the Settlement Administration, attorneys' fees and expenses, and Service Awards to Plaintiffs. *See id*. ¶¶ 56-58, 61, 85, 87. Moreover, Defendant has implemented business practice changes to improve its security policies following the Data Incident. *Id*. ¶ 59; Coates Decl. ¶ 7.

**1.    Settlement Benefits**

The Settlement Fund will provide substantial relief to Class Members. Specifically, Class Members may submit a Claim Form for (a) Out-of-Pocket Losses and (b) Pro-Rata Cash Payments. S.A. ¶¶ 56-58. The Pro-Rata Cash Payments will be increased or decreased *pro rata* after the payment of documented Out-of-Pocket losses as described herein, attorneys' fees and expenses, Class Representatives' Service Awards, and Administrative Expenses. The *pro rata* payment is

currently estimated to be between $53.77 and $107.55 per claimant (based upon claims rate projections of 10% and 5% respectively), and will be capped at $350 per Claimant. *Id.*

The Settlement Fund will provide compensation up to $5,000 per Settlement Class Member for documented out-of-pocket monetary losses incurred because of the Data Incident. *Id.* ¶ 57. Such losses include—without limitation—unreimbursed losses relating to fraud or identity theft; professional fees including attorneys' fees, accountants' fees, and fees for credit repair services; costs associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs that were incurred on or after the Data Incident through the date of claim submission; and miscellaneous expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges. *Id.* Any Remainder Funds following the distribution and reissuance of all payments from the Settlement Fund—including uncashed checks—will be sent to one or more Court-approved charitable organizations as a *cy pres* distribution. *Id.* ¶ 41.

### 2. <u>Scope of the Release</u>

In exchange for consideration above, Class Members who fail to timely and validly exclude themselves from the Settlement will be deemed to have released Defendant from claims arising from or related to the Data Incident. *Id.* ¶ 79.

### 3. <u>The Notice and Administration Plans</u>

Under the Settlement Agreement, the Parties jointly selected Kroll Settlement Administration LLC ("Kroll") as the Settlement Administrator responsible for providing the Class with notice and claims administration. S.A. ¶ 44. To effectuate notice, Defendant will send the Settlement Administrator a Settlement Class List of each Settlement Class Members' full name and current or last known address within fourteen (14) days of the Preliminary Approval Order. *Id.* ¶¶ 45, 67; Settlement Timeline. Class Counsel contacted several settlement administrators

before selecting Kroll as the appropriate administrator for this case. Coates Decl. ¶ 13. Class Counsel recognizes that costs and expenses associated with settlement administration will be deducted from the Settlement Fund, and thus sought to select a Settlement Administrator whose services and price were advantageous for the Class. *Id*.

Within thirty (30) days of the Preliminary Approval Order, the Settlement Administrator will provide a written notice to each Class Member for whom a valid mailing address is known via U.S. mail. S.A. ¶ 66. The Short Form Notice will be sent in a form substantially similar to that in **Exhibit B** to the Settlement Agreement and will inform Class Members (1) of the amount of the Settlement Fund and the benefits available; (2) that they may be bound by the Settlement by either doing nothing or by making a claim; and (3) that they can object or opt out of the Settlement and not be bound by it. *See* S.A., **Exhibit B**. Concurrently, the Settlement Administrator will publish a Long Form Notice and Claim Form on the Settlement Website. The Settlement Website established by the Settlement Administrator will contain information and resources regarding the Settlement, including copies of the Long Form Notice (attached as **Exhibit C**); Short Form Notice; FAQs; the Claim Form (attached as **Exhibit A**) that may be submitted online or mailed to the Settlement Administrator; relevant deadlines; the Settlement Agreement; and all court documents related to the Settlement. S.A. ¶ 48.

Additionally, the Settlement Administrator will be responsible for monitoring and reviewing all claims made and exclusions requested; determine eligibility; and disburse funds from the Settlement Fund to Class Members. S.A. ¶¶ 9, 54, 60.  The Notice Plan will provide sufficient notice to the Class. *See* Declaration of Patrick M. Passarella of Kroll Settlement Administration LLC in Connection with Preliminary Approval of Settlement ("Kroll Decl.") ¶¶ 6-15 (attached hereto as **Exhibit 3**).

### 4.  Attorneys' Fees, Costs, Expenses, and Service Awards

The Settlement Agreement provides that—at least fourteen (14) days before the Objection Deadline—Plaintiffs will file a motion for attorneys' fees not to exceed one-third (1/3 or 33.33%) of the Settlement Fund ($408,333.33), reimbursement of Class Counsel's litigation expenses (exclusive of Administrative Expenses) not to exceed $35,000, and Service Awards up to $2,500 for each Class Representative. These amounts, as approved by the Court, will be paid from the Settlement Fund. S.A. ¶¶ 83, 85.

## III.  LEGAL STANDARD

Courts generally favor and encourage the settlement of class actions. *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). To be approved, a proposed class action must meet three requirements: (1) the proposed settlement must be preliminarily approved by the Court; (2) Class Members must be given notice of the proposed settlement; and (3) a fairness hearing must take place, after which the Court must determine whether the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e); *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 372 (S.D. Ohio 2006) . At this juncture, Plaintiffs respectfully request that the Court preliminarily approve the proposed Settlement.

Obtaining preliminary approval requires a lower burden than final approval, as "[t]he question at the preliminary-approval stage is 'simply whether the settlement is fair enough' to begin the class-notice process." *Strano v. Kiplinger Washington Eds., Inc.*, 649 F. Supp. 3d 546, 553 (E.D. Mich. 2023), quoting *Garner Props. & Mgmt. v. City of Inkster*, 333 F.R.D. 614, 626 (E.D. Mich. 2020); *see also Hyland v. Homeservs. of Am., Inc.*, No. 3:05-CV-612, 2009 WL 2525587, at *2 (W.D. Ky. Aug. 17, 2009) (at preliminary approval stage, proposed settlement need only "appear[] to be the product of serious, informed, non-collusive negotiation, ha[ve] no obvious

deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and fall[] within the range of possible approval.") (internal citation omitted).

Here, the Court should preliminarily approve the proposed Settlement as fair, reasonable and adequate and "direct the preparation of notice of certification, proposed settlement, and date of the final fitness hearing" to Class Members. *In re Skechers Toning Shoe Prod. Liab. Litig.*, No. 3:11-MD-2308, 2012 WL 3312668, at *7 (W.D. Ky. Aug. 13, 2012).

## IV. ARGUMENT

### A. The Proposed Settlement Satisfies the Standard for Preliminary Approval

#### 1. The Proposed Settlement is the Product of Arm's-Length Negotiations Between Experienced Professionals

A finding that the Parties to a proposed Settlement engaged in arm's-length negotiations weighs in favor of granting preliminary approval. *See Schell v. Frederick J. Hanna & Assocs., P.C.*, No. 3:15-CV-418, 2016 WL 1273297, at *2 (S.D. Ohio Mar. 31, 2016); *Roland v. Convergys Customer Mgmt. Grp. Inc.*, No. 1:15-CV-00325, 2017 WL 977589, at *1 (S.D. Ohio Mar. 10, 2017) (a settlement "reached after good faith, arms' length negotiations, warrant[s] a presumption in favor of approval"). "[N]egotiations of the Settlement Agreement were conducted at arm's-length by adversarial parties and experienced counsel … is indicative of fairness, reasonableness, and adequacy." *Sheick v. Auto. Component Carrier, LLC*, No. 09-14429, 2010 WL 3070130, at *13 (E.D. Mich. Aug. 2, 2010).

Preliminary approval is warranted here because the Settlement was the result of non-collusive, arm's length negotiations between the Parties, each of which was represented by counsel who have substantial experience with class action litigation and the legal and factual circumstances underlying this case. Coates Decl. ¶ 8. Over the course of several months, the Parties exchanged informal discovery and, on November 6, 2024, engaged in a mediation session overseen by Bruce

Friedman. *Id.* ¶¶ 6-7; S.A. ¶ 2. The Parties did not come to an agreement during the mediation, but reached a settlement in principle in the weeks following the mediation. *Id.* In seeking preliminary approval—unopposed by Defendant—Class Counsel believe the Settlement is fair and reasonable, and all Parties certify that the Settlement was reached at arm's length. *Id.*

### 2.  The Proposed Settlement Falls Within the Range of Reasonableness and Warrants Issuance of Notice and a Final Approval Hearing

While Plaintiffs are confident in the merits of their case, they recognize the substantial risks associated with continued litigation and that recovery for Class Members is not assured. The fairness and adequacy of the Settlement is determined by assessing the obstacles that Class Members would need to overcome to succeed on the merits— along with the increased expenses and time of continued litigation—with the real, available benefits afforded by the Settlement. *See, e.g., Amos*, 2015 WL 4881459, at *1 ("In general, most class actions are inherently complex, and settlement avoids the costs, delayed, and multitude of other problems associated with them.") (internal citations and quotations omitted).

Were litigation to continue here, Plaintiffs would face these challenges, including obtaining class certification; prevailing on the merits at trial; prevailing in a potential appeal; and the monetary costs and time associated with prolonged litigation. Moreover, the monetary benefits afforded to each individual Class Member through the Settlement are commensurate with other recent classwide data breach settlements. Coates Decl. ¶¶ 10-11, 21. The Settlement Agreement provides Class Members with outstanding benefits, including compensation for Out-of-Pocket Losses up to $5,000 and Pro-Rata Cash Payments. *Id.* ¶ 10, S.A. ¶¶ 56-58. This factor thus weighs in favor of granting preliminary approval.

### 3.  The Proposed Settlement Has No Obvious Deficiencies

Finally, there exist no other factors to dissuade the Court from granting preliminary

approval, like excessive attorney compensation or inequitably preferential treatment of Plaintiffs. *See In re Wendy's Co. S'holder Derivative Action*, No. 1:16-CV-1153, 2020 WL 13169460, at *5 (S.D. Ohio Jan. 24, 2020), *aff'd*, 44 F.4th 527 (6th Cir. 2022). Here, the proposed Settlement is fair and adequate, and all Plaintiffs and Class Members will receive settlement benefits in accordance with the proposed claims process before the Court. Moreover, the Court has final say over the awarding of attorneys' fees and expenses and Service Awards for Representative Plaintiffs. Here, Proposed Class Counsel has agreed to limit their attorneys' fee request to one-third (33.33%) of the Settlement Fund ($408,333.33).

Courts within the Sixth Circuit routinely grant attorneys' fees of 1/3 of the settlement fund in data breach class actions. *See Migliaccio v. Parker Hannifin, Corp.*, No. 1:22-cv-835, Doc 42, ¶ 7 (N.D. Ohio Aug. 2, 2023) (granting attorneys' fees of $583,333.33 from $1,750,000 common fund in data breach settlement); *Tucker v. Marietta Area Health Care Inc.*, No. 1:11-cv-184, Doc. 13, ¶ 7 (S.D. Ohio Dec. 8, 2023) (granting attorneys' fees of $585,333.33 from $1,750,000 common fund in data breach settlement); Coates Decl. ¶ 18. Plaintiffs also seek modest Service Awards in the amount of $2,500 for each named Plaintiff for their contributions to the Litigation. Coates Decl. ¶ 22; S.A. ¶ 83. This is commensurate with service awards for plaintiffs in other recent data privacy class action settlements. *See Jackson v. Nationwide Retirement Solutions, Inc.*, No. 2:22-cv-3499, 2024 WL 958726, at *7 (S.D. Ohio Mar. 5, 2024) ($5,000 service awards to each of the class representatives); *Marietta Area Health Care*, Doc. 13, ¶ 7 (S.D. Ohio Dec. 8, 2023) ($5,000 service awards to each of the six class representatives); *Parker Hannifin*, Doc. 42, ¶ 7 ($3,500 service awards to each of the nine class representatives).

Because Plaintiffs' motion for fees, expenses, and Service Awards will be filed two weeks before the deadlines for Class Members to object or opt out, the Court will be able to gauge the

Class's response to the proposed fee structure in determining whether to grant final approval. This weighs in favor of finding the proposed settlement fair, reasonable, and adequate.

### B.  Certification of the Settlement Class is Appropriate

For the limited purpose of settlement, the Court should grant provisional certification of the Settlement Class and appoint Plaintiffs and their Counsel to represent the Settlement Class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619 (1997) (noting that "Settlement is relevant to a class certification"). Here, Plaintiffs have satisfied the numerosity, commonality, typicality, and adequacy requirements of Fed. R. Civ. P. 23(a), as well as the predominance and superiority elements of Fed. R. Civ. P. 23(b)(3) necessary to merit preliminary approval.

#### 1.  Numerosity

Under Fed. R. Civ. P. 23(a)(1), numerosity exists where a class is so numerous that joinder of all Class Members is impracticable. "There is no specific number below which class action relief is automatically precluded. Impracticability of joinder is not determined according to a strict numerical test but upon the circumstances surrounding the case." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 523 n.24 (6th Cir. 1976). In fact, "[t]he Sixth Circuit Court of Appeals has affirmed the certification of a class made up of less than 100 individuals." *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 339 (N.D. Ohio 2001), citing *Haytcher v. ABS Industries, Inc.*, 1991 WL 278981, at *1-2 (6th Cir. Dec. 27, 1991).

Here, where the class is comprised of approximately 119,000 individuals, the numerosity requirement is certainly met.

#### 2.  Commonality

Additionally, Fed. R. Civ. P. 23(a)(2) requires that there exist "questions of law or fact common to the class." This requirement is met if there exists "'a common contention' [among

Class Members] that, if resolved, would resolve claims of all class members 'in one stroke.'"
*Strano v. Kiplinger Washington Eds., Inc.*, 649 F. Supp. 3d 546, 554 (E.D. Mich. 2023), quoting
*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The Supreme Court has noted that "for
purposes of Rule 23(a)(2) even a single common question will do." *Wal-Mart Stores, Inc.*, 564
U.S. at 350. Here, Plaintiffs' and Class Members' claims are common to one another; they all
relate to the Data Incident experienced by Defendant and whether Defendant's security practices
were adequate to protect Plaintiffs and Class Members' Private Information. The evidence
necessary to resolve this question is the same for each Settlement Class Member and thus can be
resolved at once. Accordingly, this weighs in favor of granting preliminary approval.

### 3. <u>Typicality</u>

Moreover, under Fed. R. Civ. P. 23(a)(3), the claims or defenses of the Plaintiffs must be
typical to that of Class Members. "The typicality requirement ensures that the representative's
interests will be aligned with those of the represented group and that the named plaintiff will also
advance the interests of the class members." *Chesher v. Neyer*, 215 F.R.D. 544, 549 (S.D. Ohio
2003). This element is met when a plaintiff's claim "arises from the same event or practice or
course of conduct that gives rise to the claims of other class members, and if his or her claims are
based on the same legal theory." *Id.* Here, all of Plaintiffs' and Class Members' claims involve the
same factual and legal theories regarding Defendant's data privacy practices. Thus, Plaintiffs'
claims are sufficiently typical of those of Class Members, making them appropriate Class
Representatives for the purpose of settlement.

### 4. <u>Adequacy of Representation</u>

Finally, Fed. R. Civ. P. 23(a)(4) requires that "the representative parties will fairly and
adequately protect the interests of the class." Specifically, they "must have common interests with

unnamed members of the class," and "it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Am. Med. Sys.*, 75 F.3d at 1083, quoting *Senter*, 532 F.3d at 525. Here, Plaintiffs have no conflicts with the Class Members they seek to represent and have participated actively at every stage of litigation. Coates Decl. ¶ 22.

Likewise, Plaintiffs' Counsel have significant experience in class actions, particularly data breach class actions. *Id.* ¶¶ 3-4. Throughout the pendency of this litigation, they have invested considerable time and resources into pursuing Plaintiffs' claims and have used their vast experience to negotiate a favorable Settlement for Class Members. *Id.* ¶¶ 8, 20. Accordingly, they are qualified to serve as Class Counsel in this case. *Id.* ¶ 4.

## 5.  <u>Certification Under Rule 23(b)(3) is Appropriate</u>

Plaintiffs have satisfied the elements of predominance and superiority articulated in Fed. R. Civ. P. 23(b)(3). Predominance "parallels the Rule 23(a)(2) commonality requirement in 'that both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues.'" *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. at 345, quoting *In re Am. Med. Sys., Inc.*, 75 F.3d at 1084; *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at \*6 (W.D. Ky. Dec. 22, 2009) (same). Moreover, the Court must determine that a class action is "superior to other methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### a.  *Common Questions of Law and Fact Predominate*

Predominance is generally satisfied where "the claims of the entire Class involve the same questions of law and fact[.]" *Thomsen v. Morley Companies, Inc.*, 639 F. Supp. 3d 758, 766 (E.D. Mich. 2022), citing *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007) ("Cases alleging a single course of wrongful conduct are particularly well-suited to class

certification."). Such circumstances exist here, where the factual and legal questions of Plaintiffs and Class Members claims all relate to the Incident and Defendant's cybersecurity practices. The answers to these questions are uniform for all Class Members, easily satisfying predominance.

### b. A Settlement Class is the Superior Method of Adjudicating This Case

Plaintiffs also satisfy the superiority element of Fed. R. Civ. P. 23(b)(3). Here, the Settlement Agreement provides Class Members with certain, readily available relief, and establishes administrative procedures to ensure that due process is met. This includes establishing clear and simple procedures by which Class Members can object to or opt-out of the Settlement. The cost of litigating this case on an individual basis would likely be prohibitive for Class Members; class actions remain the most reasonable means of resolving Plaintiffs' claims here. *See Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 545 (6th Cir. 2012). The amount in dispute is too small for individual Class Members to pursue on their own, especially in light of the complex technical issues and the likelihood of expert testimony and document review.

### C. The Court Should Appoint the Proposed Class Representatives, Class Counsel, and Settlement Administrator

Moreover, Plaintiffs respectfully request that the Court appoint them Class Representatives for the purpose of settlement. As stated herein, Plaintiffs have actively engaged in the litigation, including collaborating with Counsel in the preparation of the Complaints; assisting in engaging in informal discovery; reviewing and approving the proposed settlement demand; and approving the terms of the Settlement on behalf of the Class. Coates Decl. ¶ 22. Plaintiffs remain committed to fulfilling their responsibility to the Class through final approval.

It is for the same reasons that the Court should designate Terence R. Coates (Markovits, Stock & DeMarco, LLC), Gary M. Klinger (Milberg Coleman Bryson Phillips Grossman, PLLC), Cassandra P. Miller (Strauss Borrelli PLLC); Brian Flick (DannLaw), and Tyler J. Bean (Siri

Glimstad) as Class Counsel. Profiles for each attorney and their respective firms are attached as Exhibits A-E to the Coates Decl. Finally, the Parties have agreed, pending the Court's approval, to Kroll Settlement Administration, LLC, as the Settlement Administrator, which has a record of successful settlement administrations in class actions, and merits appointment by the Court. Kroll Decl. ¶¶ 2-3.

### D. The Proposed Form and Manner of Notice is Reasonable and Should be Approved

Under Rule 23(e)(1), notice must be directed "in a reasonable manner to all class members who would be bound" by the proposed settlement. "All that notice must do 'is fairly apprise . . . prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interests.'" *In re Skechers Toning Shoe Prods. Liab. Litig.*, No. 3:11-MD-2308, 2012 WL 3312668, at *11 (W.D. Ky. Aug. 13, 2012), quoting *Gooch v. Life Inv. Ins. Co. of Am.,* 672 F.3d 402, 423 (6th Cir.2012). Where a class is being certified under Rule 23(b)(3), the notice provided "must be 'the best notice practicable' and include 'individual notice to all members who can be identified through reasonable effort.'" *Moeller v. Wk. Publications, Inc.*, 649 F. Supp. 3d 530, 544 (E.D. Mich. 2023), quoting Rule 23(c)(2)). The Notice Plan articulated in the Settlement Agreement provides Class Members with the best notice practicable. The Settlement Administrator will provide Notice to all persons who meet the Definition of the Class and whose contact information is identified by Defendant in the Settlement Class List and through databases tracking addresses and name changes. Moreover, the Settlement Administrator will establish and monitor the Settlement Website to provide the Class with important, relevant information about the Settlement and upcoming deadlines. Kroll Decl. ¶ 12.

Moreover, Fed. R. Civ. P. 23(h)(1) mandates that notice for fee motions "must be served

on all parties and, for motions by class counsel, directed to class members in a reasonable manner." The Notice Plan outlined in the Settlement Agreement fulfills these obligations and is in accordance with Rule 23 and due process because it provides Class Members an overview of the nature of the action, including the Class definition, claims asserted, and benefits available; the binding effect of a judgment upon Class Members who fail to opt-out or object or who submit a claim; the process Class Members must follow to opt-out or object; information regarding requested Class Representative Service Awards; and information regarding requested Class Counsel fees and expenses. Fed. R. Civ. P. 23(c)(2)(B).

> ### E. The Court Should Provide a Schedule Leading Up to the Final Approval Hearing

Finally, Plaintiffs request that the Court set a schedule leading up to a Final Approval Hearing, that includes, *inter alia*, deadlines for notice to Class Members to object to, opt-out of, or make a claim under the settlement; deadline for filing the motion for final approval; and deadline for filing the motion for attorneys' fees and expenses. A proposed Settlement Timeline is included in the Settlement Agreement and the Proposed Order Granting Preliminary Approval of Class Action Settlement (**Exhibit 4**). At the Final Approval Hearing, the Court may hear all evidence and oral argument necessary to make its final evaluation of the Settlement. *See* Fed. R. Civ. P. 23(e)(2).

## V. CONCLUSION

Plaintiffs respectfully request that the Court grant Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement.

Dated: February 10, 2025                Respectfully submitted,

*/s/ Terence R. Coates*
Terence R. Coates (0085579)
**MARKOVITS, STOCK & DEMARCO, LLC**
119 East Court Street, Suite 530

Cincinnati, Ohio 45202
Telephone: (513) 651-3700
Facsimile: (513) 665-0219
*tcoates@msdlegal.com*

Brian D. Flick (0081605)
**DANNLAW**
15000 Madison Avenue
Lakewood, Ohio 44107
Telephone: (513) 645-3488
Facsimile: (216) 373-0536
*bflick@dannlaw.com*

Cassandra P. Miller (*pro hac vice*)
**STRAUSS BORRELLI, PLLC**
One Magnificent Mile
980 North Michigan Avenue, Suite 1610
Chicago, Illinois 60601
Telephone: (872) 263-1100
Facsimile: 872) 263-1109
*cmiller@straussborrelli.com*

Tyler J. Bean*
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
E: *tbean@sirillp.com*

Gary M. Klinger
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: (866) 252-0878
*gklinger@milberg.com*

Christopher Wiest (0077931)
**Chris Wiest, Attorney at Law, PLLC**
50 E. Rivercenter Blvd, Ste. 1280
Covington, KY 41011
513-257-1895
*chris@cwiestlaw.com*

Thomas A. Zimmerman, Jr. (*pro hac vice*)

**ZIMMERMAN LAW OFFICES, P.C.**
77 West Washington Street, Suite 1220
Chicago, Illinois 60602
Telephone: (312) 440-0020
Facsimile: (312) 440-4180
*tom@attorneyzim.com*

*Counsel for Plaintiffs and the Putative Class*

* Motion for Appearance *Pro Hac Vice* pending